## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

_____
|  |  |
|---|---|
| FS2 CAPITAL PARTNERS, LLC, | CIVIL ACTION |
| Plaintiff, |  |
| v. | No.  14-4933 |
| DANIEL J. CHURCH, |  |
| Defendant. |  |
_____

### MEMORANDUM

**ROBERT F. KELLY, Sr. J.**                                   **JANUARY 16, 2015**

Presently before this Court are separate Motions for Sanctions filed by the parties, Plaintiff, Franklin Square Capital Partners, L.P. ("Plaintiff"), and Defendant, Daniel J. Church ("Defendant"), and the parties individually filed Replies in Opposition.  For the reasons set forth below, the parties' Motions are denied.

## I.      BACKGROUND

### A.      Factual Background

Plaintiff is a broker-dealer with a principle place of business in Philadelphia, Pennsylvania.  Compl. ¶ 2.  As stated in the Complaint, the mission of Plaintiff is to provide the investing public with the same access to alternative investment funds as is enjoyed by institutional investors.  Id. at ¶ 7.  To accomplish this mission, Plaintiff employed a creative structure using an investment vehicle called a business development company ("BDC") and created the first non-traded BDC.  Id.

Defendant is a resident of Charlotte, North Carolina.  Id. at ¶ 3.  In September of 2010, Defendant was hired by Plaintiff as a Regional Sales Director.  Id.  Defendant was employed in this capacity throughout his tenure with Plaintiff.  Id.  During the course of Defendant's employment, he entered into an Amended and Restated Registered Representative Agreement ("ARRA"), and a Confidentiality, IP Ownership and Non-Solicitation Agreement ("ACA") with Plaintiff, which contain confidentiality and non-solicitation provisions.  Id. at ¶ 3.  Under these provisions, Defendant is prohibited from associating with a business that competes with, or is in the same business as, Plaintiff or any of its affiliates for a period of six months after his resignation.  Id. at ¶ 11.

On May 31, 2014, Defendant resigned from his position with Plaintiff.  Id. at ¶ 17. Shortly thereafter on June 3, 2014, the general counsel for Plaintiff sent Defendant a letter demanding the immediate return of any proprietary information and reminding Defendant of his post-employment obligations to Plaintiff.  Id. at ¶ 18.

On July 24, 2014, Highland Capital Management, L.P. ("Highland"), issued a press release stating that, within the week, Highland would enter into the independent channel and non-traded products business.  Id. at ¶ 19.  Furthermore, the press release announced that Defendant had been hired as a Regional Sales Director distributing Highland's new products in the independent broker-dealer channel.  Id.  In response to this news, counsel for Plaintiff sent a letter to Defendant on July 29, 2014, again reminding him of his post-employment obligations to Plaintiff, and stating that, if the press release was accurate, then Defendant was violating these obligations.  Id. at ¶ 20.  Counsel for Highland and its affiliate NexBank ("NexBank")[1], responded to Plaintiff's letter by calling Plaintiff's counsel.  Id. at ¶ 22.  In this telephone conversation, NexBank's counsel admitted that Defendant had been hired by NexBank.  Id.  In

---

[1] For clarity purposes, we refer to counsel for Highland and NexBank as "NexBank's counsel."

addition, NexBank's counsel asserted that Defendant signed an Acknowledgement and Representation Form, which states in various ways that Defendant has agreed not to disclose or use any confidential or proprietary information belonging to Plaintiff, and an offer agreement, which prohibits Defendant from soliciting sales for certain products related to Plaintiff's business.  Id.

Defendant began working for NexBank on August 18, 2014.  (Pl.'s Resp. in Opp'n to Def.'s Mot. for Sanctions, 5 (citing Def.'s Dep., 150: 3-17)).  On August 22, 2014, Plaintiff filed suit against Defendant alleging that he breached his legal obligations under his non-compete covenant with Plaintiff.  Compl. ¶ 30.

**B.    Relevant Procedural History**

The instant Complaint alleges that Defendant was in breach of contract for violating his post-employment obligations to Plaintiff.  See Compl.  Six days after filing the Complaint, Plaintiff filed a Motion for Expedited Discovery, which Plaintiff asserted was necessary to determine if Defendant's actions warranted immediate and preliminary injunctive relief.  (See Pl.'s Mot. for Exp. Disc. at 1.)  Through this expedited discovery, Plaintiff sought to understand the full scope of Defendant's job responsibilities at NexBank; specifically, whether Defendant was soliciting sales from Plaintiff's clients and other key information.  (Id.)  On September 2, 2014, the Court granted Plaintiff's Motion, and ordered that Plaintiff was granted leave to immediately submit document requests and interrogatories to Defendant.  (Order Granting Mot. for Exp. Discovery, Sept. 2, 2014.)  In addition, Defendant was ordered to respond within seven days to each request and to appear for a deposition within fourteen days.  (Id.)  On this same date, Plaintiff sent the discovery requests via email and Federal Express.  (Pl.'s Mot. for

Sanctions, 1-2.)  On September 3, 2014, Defendant received and signed for the mailed documents.  (Id. at 2.)

On September 8, 2014, Defendant filed a dual Motion for Jurisdictional Discovery and to Stay the Court's Order Granting Expedited Discovery.  (See Doc. No. 6.)  An in court hearing was held on September 10, 2014, in which the parties set forth their legal arguments pertaining to this Motion.  (See Doc. No. 8.)  Subsequently, the Court denied this Motion on September 11, 2014.  (See Doc. No. 9.)

On September 15, 2014, both parties filed motions.  Plaintiff filed a Motion for Sanctions and Defendant filed a Motion to Compel Arbitration and Dismiss the Complaint, or in the alternative, to Dismiss the Complaint for Lack of Personal Jurisdiction ("Motion to Compel Arbitration").  (See Docs. Nos. 10, 12.)  The impetus for Plaintiff's Motion for Sanctions is the Court Order granting expedited discovery.  Plaintiff contends that Defendant has failed to respond to the written discovery requests within the requisite seven days and neglected to sit for a deposition within the required fourteen day period.  (Pl.'s Mot. for Sanctions, 4-5.)  In consideration of these alleged infractions, Plaintiff requests that, pursuant to Federal Rule of Civil Procedure 37, the Court find that Defendant is currently causing Plaintiff irreparable harm.  (Pl.'s Mot. for Sanctions, 7.)  Additionally, Plaintiff requests that the Court order Defendant to cease working for NexBank until all the requested discovery has been provided, and it is proven that Plaintiff is not suffering any irreparable harm from Defendant's violation of his contractual obligations.  (Id.)  In the alternative, Plaintiff requests that Defendant be held in contempt of Court until Plaintiff's discovery requests have been met.  (Id.)

Defendant filed a Response in Opposition on September 16, 2014.  (See Doc. No. 16.)  In this Response, Defendant admits that the documents and the deposition will be late by a period

of three days and one week, respectively.  (Def.'s Resp. in Opp'n, 5.)  However, Defendant argues that, aside from his jurisdictional concerns, sanctions are not warranted in this case because the delay is necessary for Defendant to gather responsive documents, respond to the comprehensive eighteen interrogatories, and to become available for his deposition.[2]  (Id. at 6.) Furthermore, Defendant contends that the proper location for his deposition is the state of North Carolina, where he works and resides.  (Id. at 7.)  Finally, Defendant requests that the Court order Plaintiff to pay Defendant's costs in defending what Defendant terms is a "baseless and harassing" motion.  (Id. at 4.)

On September 17, 2014, an in-court hearing was held where the parties set forth their legal arguments regarding the outstanding Motions.  At the hearing, the Court reserved ruling on Plaintiff's Motion for Sanctions, and ordered that the deposition of Defendant was to take place either telephonically or in North Carolina within the following week.  (Transcript of Oral Argument, 18.)  Furthermore, the Court denied Defendant's Motion to Compel Arbitration without prejudice, and asserted that such Motion can be filed at a later date after the deposition of Defendant has been completed and more information is known.  (Id. at 31.)  On September 29, 2014, the Court, acting to clean-up the docket, produced a written Order denying Defendant's Motion to Compel Arbitration without prejudice.  (See Court Order Denying Def.'s Motion to Compel, Sept. 29, 2014.)  Defendant, subsequently, appealed this decision to the United States Court of Appeals for the Third Circuit ("Third Circuit").  At the time of this Memorandum Opinion, the issue is pending resolution by the Third Circuit.

Later, on November 26, 2014, Defendant filed a Motion for Sanctions against Plaintiff. The general gist of this Motion is Defendant's belief that sanctions are warranted pursuant to

---

[2] The Court notes that Defendant attributes a three day work conference as the reason for the delay in his availability for the deposition.  (Def.'s Resp. in Opp'n to Pl.'s Mot. for Sanctions, 5.)

Federal Rule of Civil Procedure 11 because Plaintiff's lawsuit is "baseless," appears to be filed "solely to harass" Defendant, and "gain confidential business information regarding his (Defendant's) new employer."  (Def.'s Mot. for Sanctions, 1.)  Plaintiff filed a Response in Opposition to Defendant's Motion on December 15, 2014, which argues that Rule 11 has not been violated in any way.  (See Doc. No. 32.)

## II.   DISCUSSION

Prior to adjudicating the appropriateness of sanctions in this case, we must first determine whether the Court retains jurisdiction over this issue in light of Defendant's appeal pending before the Third Circuit.  Despite the absence of subject-matter jurisdiction, courts have retained the power to issue sanctions when the order is collateral to the merits.  Tellado v. IndyMac Mortg. Services, 707 F.3d 275, 281 (3d Cir. 2013) (citing Willy v. Coastal Corp., 503 U.S. 131, 138 (1992)); In re Orthopedic "Bone Screw" Products Liab. Litig., 132 F.3d 152, 156 (3d Cir. 1997) ("[T]here is abundant authority permitting the imposition of sanctions in the absence of jurisdiction over a case.").  For instance, the United States Supreme Court reasoned that, "[An] imposition of a Rule 11 sanction is not a judgment on the merits of an action.  Rather, it requires the determination of a collateral issue: whether the attorney has abused the judicial process, and, if so, what sanction would be appropriate."  Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 395–396 (1990).  Thus, there exists no constitutional question because it "does not signify a district court's assessment of the legal merits of the complaint."  Id. at 396.

In this case, since the issue of sanctions under Rule 11 and/or Rule 27 is collateral to Defendant's appeal, we possess the necessary jurisdiction to adjudicate the Motions for Sanctions filed by the parties.  See In re Hussain, 532 F. App'x 196, 197 (3d Cir. 2013) (finding that the District Court had the power to order sanctions pursuant to Rule 11, which were

collateral to appeal before Third Circuit); <u>Collier v. National Penn Bank</u>, No. 12-3881, 2013 WL 7157976, at *1 (E.D. Pa. Apr. 1, 2013) (finding that, despite lacking subject-matter jurisdiction over the substantive claims, District Court has power to impose any sanctions under the Federal Rules of Civil Procedure); <u>U.S. ex rel. Atkinson v. Penn. Shipbuilding Co.</u>, 528 F. Supp. 2d 533, 547 (E.D. Pa. 2007).

## A. <u>Plaintiff's Motion for Sanctions</u>

### 1. **Rule 37 Sanctions**

It is well established in this Circuit that decisions regarding the imposition of sanctions under Rule 37 are "committed to the sound discretion of the district court." <u>DiGregorio v. First Rediscount Corp.</u>, 506 F.2d 781, 788 (3d Cir. 1974).  Under Rule 37(b)(2)(A), if a party fails to obey an order to provide or permit discovery, we may take any of the following actions:

> (i) direct that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims; (ii) prohibit the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence; (iii) strike the pleadings in whole or in part; (iv) stay further proceedings until the order is obeyed; (v) dismiss the action or proceeding in whole or in part; (vi) render a default judgment against the disobedient party; or (vii) treat as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

Fed. R. Civ. P. 37(b)(2)(A).  Plaintiff's Motion seeks relief under section (i).  As a result of Defendant's alleged discovery infractions, Plaintiff argues that the Court should enter an order finding that Defendant is irreparably causing harm to Plaintiff, and, accordingly, transfer the burden[3] of proving otherwise from Plaintiff to Defendant.[4]  (Pl.'s Mot. for Sanctions, 7.)

---

[3] Shifting the burden of proof, as Plaintiff attempts to do in this case, is a "fairly extreme sanction" as it "significantly changes the likely outcome at trial."  <u>Estate of Leon Spear v. Comm. of I.R.S.</u>, 41 F.3d 103, 112 (3d Cir. 1994).  "When a party does not provide information to another party to which that party is entitled, a court is certainly permitted to 'even out' the proceedings by shifting the burden of proof in a fair way even in the absence of bad faith."  <u>Id.</u>

Although the establishment of facts and the entrance of default are differing sanctions, applying the proper standard requires determining whether the invocation of Rule 37(b)(2)(A)(i) in this case is the equivalent of default.  See Estate of Spear v. C.I.R., 41 F.3d 103, 110 (3d Cir. 1994).  If so, we must analyze Plaintiff's claim under the six factors established in Poulis v. State Farm Fire and Casualty Co., 747 F.2d 863 (3d Cir. 1984).  See Spear, 41 F.3d at 110; see also Ali v. Sims, 788 F.2d 954, 957 (3d Cir. 1986).  Otherwise, the three factors enunciated in Chilcutt v. United States, 4 F.3d 1313 (5th Cir. 1993), and later adopted by the Third Circuit in Estate of Spear, 41 F.3d at 110, control our decision.

A sanction is equivalent to default judgment if a defendant cannot present his case-in-chief on affirmative defenses and the burden shifts to defendant on proving the non-existence of damages.  See In re Land End Leasing Inc. v. Blue Mack Transport, Inc., 220 B.R. 226, 231 (D. N.J. 1998) (citing Chilcutt, 4 F.3d at 1320).  Since both criteria are satisfied in this case, it is evident that the sanction sought by Plaintiff is equivalent to default judgment.  Thus, we must apply the Poulis factors in order to determine whether sanctions pursuant Rule 37(b)(1)(A)(i) are warranted.

The factors to be weighed under Poulis are as follows:  (1) the extent of the Defendant's personal responsibility; (2) the prejudice to the Plaintiff; (3) the history of dilatoriness; (4) whether the conduct was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal; and (6) the meritoriousness of the claim.  Poulis, 747 F.2d at 868.  Each factor does not need to be satisfied for the District Court to dismiss a claim.  Hicks v. Feeney, 850 F.2d 152, 156 (3d Cir. 1988).  However, all the factors must be considered.  Mindek v.

---

[4] In addition, Plaintiff contends that Defendant should be prohibited from working at NexBank until the requested discovery has been provided.  (Pl.'s Mot. for Sanctions, 7.)  However, Plaintiff has not provided any legal basis for such an order, and the Court does not find such action warranted.

Rigatti, 964 F.2d 1369, 1373 (3d Cir. 1992).  After carefully reviewing these factors, we conclude that sanctions are not warranted in this case.  Each of the factors is individually addressed below.

### (1) Extent of Defendant's Personal Responsibility

The responsibility for the failure to comply with the expedited discovery requirements falls entirely on Defendant in this case.  Defendant owns up to this responsibility, but contends that the delay was the result of Defendant's filing of the Motion to Stay and the large number of interrogatories requested by Plaintiff.  Despite Defendant's justifications, we find that this factor weighs in favor of Plaintiff.

### (2) The Prejudice to the Plaintiff

A finding of prejudice to an adversary weighs heavily in favor of the imposition of sanctions.  Adams v. Trustees of N.J. Brewery Employees' Pension Tr. Fund, 29 F.3d 863, 873-74 (3d Cir. 1994); Huertas v. City of Phila., No. 02-7955, 2005 WL 226149, at *3 (E.D. Pa. Jan. 26, 2005).  For conduct to be deemed "prejudicial" does not mean that it has to rise to the level of "irremediable harm" being inflicted.  Curtis T. Bedwell and Sons, Inc. v. Int'l Fid. Ins. Co., 843 F.2d 683, 693-94 (3rd Cir. 1988).  Rather, prejudice can occur where a party's "ability to prepare effectively a full and complete trial strategy" is impeded.  Ware v. Rodale Press, Inc., 322 F.3d 218, 222 (3d Cir. 2003).  Specifically, the burdens or costs imposed to gain compliance with court orders are prejudicial.  See Poulis, 747 F.2d at 868; Adams, 29 F.3d at 874.

In this case, we find that any prejudice suffered by the Plaintiff in this case due to Defendant's conduct is minimal.  Although there is some disparity in the calculation of the time periods here, we find that, at most, the interrogatories would have been four business days late if submitted on September 17, 2014.  Furthermore, Defendant submits that he would have been

9

available for a deposition the week of September 22, 2014, which was only two business days past the date ordered by the Court.  In consideration of the record before the Court, we hold that the delay is reasonable and did not significantly prejudice the Plaintiff.  Thus, this factor militates in favor of Defendant and against the imposition of sanctions.

### (3) History of Dilatoriness

A history of dilatoriness is exhibited by "extensive and repeated delay or delinquency" such as "consistent non-response to interrogatories or consistent tardiness in complying with court orders."  Briscoe v. Klaus, 538 F.3d 252, 260 (3d Cir. 2008) (citing Adams, 29 F.3d at 874).  In this case, other than the conduct at issue, there is no history of dilatoriness by Defendant.  Accordingly, this factor weighs against the institution of sanctions.

### (4) Whether Defendant's Conduct was Willful or in Bad Faith

In essence, this prong tasks the Court with determining the underlying rationale behind the Defendant's conduct.  Defendant's "failure to comply with the court's orders and in dragging the case out [must be] willful and not merely the result of negligence or inadvertence" to find for Plaintiff.  Emerson v. Thiel College, 296 F.3d 184, 191 (3rd Cir. 2002).  Thus, the court must ascertain whether the conduct was "strategic, intentional or self-serving" and not just negligence.  Adams, 29 F.3d at 875.  Where the record is devoid of any indication that Defendant's failure was from "excusable neglect" the conclusion that their "failure is willful is inescapable."  Palmer v. Rustin, No. 10-42, 2011 WL 5101774, at *2 (W.D. Pa. Oct. 25, 2011).

Here, we do not find Defendant's failure to comply with the expedited discovery Order to be willful in the sense that this factor contemplates.  Defendant was late by only a minimal number of days.  This delay, while not justified, is understandable considering the sizeable number of interrogatories submitted by Plaintiff, and the unique complexities of this action,

which prompted Defendant to seek a stay.  See Roman v. City of Reading, 121 F. App'x 955, 960 (3d Cir. 2005) (non-precedential) (stating that the "[a]bsence of reasonable excuses may suggest that the conduct was willful or in bad faith") (citing Ware, 322 F.3d at 224).  Thus, this factor weighs in favor of Defendant.

### (5) The Effectiveness of Other Sanctions

Under the facts of this case, it is the Court's view that Defendant's transgressions were relatively minor and reasonable under the circumstances.  Furthermore, it is the Court's understanding that, although late, Defendant has complied with the Order of the Court.  As such, it is hard to conclude that any harsher sanction than the one requested by Plaintiff would be justified.  Overall, we find the applicability of this factor to be minimal, and do not place any great emphasis on it.

### (6) The Meritoriousness of the Claim or Defense

Based on the filings of the parties, it appears that Plaintiff's claim could have merit. However, this is still a litigable issue, and the Court is not in a position at this point in the litigation to make any conclusory decision as to the merit of Plaintiff's claim.  As such, we do not find that this factor weighs heavily in favor of either party.

In consideration of the aforementioned factors, we find that sanctions pursuant to Rule 37 are not warranted in this case.  Thus, utilizing the broad discretion that is accorded the District Court in Rule 37 motions, we deny Plaintiff's Motion for Sanctions.  See DiGregorio, 506 F.2d at 788.

### 2.   Contempt of Court

In the alternative to Sanctions under Rule 37, Plaintiff seeks that Defendant be held in contempt of court until Plaintiff's discovery requests have been met.  (Pl.'s Mot. for Sanctions,

7.)    While contempt of court is proper as a coercive sanction, we find that is not necessary because it is the understanding of the Court that Defendant has adhered to his required discovery obligations at this time.  Thus, this request is denied as moot.

**B.  Defendant's Motion for Sanctions**

Defendant's Motion for Sanctions was filed pursuant to Federal Rule of Civil Procedure 11 ("Rule 11").  This rule obligates that Plaintiff, in filing the Complaint, has certified that "to the best of its knowledge, information, and belief," and "formed after an inquiry reasonable under the circumstances," that the document:  (1) is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) the claim is warranted by existing law, (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.  Fed. R. Civ. P. 11(b).

Under Rule 11, a party may seek, and the Court may enter, sanctions for any violation of these four factors.  See Fed. R. Civ. P. 11(c).  However, the imposition of sanctions pursuant to this rule is reserved for the purpose of protecting litigation abuses.  Airo v. The Underwriting Members of Syndicate 53 at Lloyds for 1998 Year of Acct., 618 F.3d 277, 297 (3d Cir. 2010); see also Doering v. Union Cty. Bd. of Chosen Freeholders, 857 F.2d 191, 194 (3d Cir. 1988) (stating that Rule 11's "primary purpose is not 'wholesale fee shifting but [rather] correction of litigation abuse'").

In analyzing the propriety of sanctions under Rule 11, the determinant factor is reasonableness, which is defined as an "objective knowledge or belief at the time of the filing of

a challenged paper" that the claim was well-grounded in law and fact.  Ford Motor Co. v. Summit Motor Prod., Inc., 930 F.2d 277, 289 (3d Cir. 1991) (citing Business Guides, Inc. v. Chromatic Communications Enterprises, Inc., 498 U.S. 533, 551 (1991)).  "Rule 11 thus imposes upon attorneys an affirmative duty to conduct a reasonable investigation into the facts of a claim to ensure that the assertions contained in each paper submission are made with reasonable belief that they are well-grounded in fact."  Anderson v. Bd. of Sch. Directors of the Millcreek Twp. Sch. Dist., No. 07-cv-111, 2013 WL 4455496, at *1 (W.D. Pa. Aug. 16, 2013) (citing Bradgate Assocs., Inc. v. Fellows, Read & Assocs., Inc., 999 F.2d 745, 751 (3d Cir. 1993)).

Overall, this is a forgiving standard with sanctions being warranted only in the "exceptional circumstance where a claim or motion is patently unmeritorious or frivolous." Ford, 930 F.2d at 289 (quoting Doering, 857 F.2d at 194).  Accordingly, a court should refuse to impose sanctions unless . . . the moving party can show a complete lack of factual or legal support for a claim."  Gary v. Braddock Cemetery and Consol Energy, 334 F. App'x. 465, 467 (3d Cir. 2009) (stating that the burden is on the moving party to establish a violation of Rule 11).

Defendant's Motion for Sanctions argues that Plaintiff's lawsuit is "baseless" and was filed solely to harass Defendant and gain confidential business information about his new employer.  (Def.'s Mot. for Sanctions, 1.)  Accordingly, Defendant seeks sanctions against Plaintiff for its "material misrepresentations, flagrant omissions, and failure to produce even a scintilla of evidence to support its baseless allegations."  (Id. at 1-2.)  We do not agree with Defendant, and deny the Motion for Sanctions for the following reasons.

First, although Defendant cites to a series of alleged material misrepresentations made by Plaintiff, we conclude that, rather than misrepresentations, these are factual disagreements, underlying Plaintiff's claim.  Such disagreements are routinely resolved through the litigation

process.  Thus, these alleged misrepresentations fail to provide any basis for sanctions under Rule 11.

As an additional ground for sanctions, Defendant alleges that Plaintiff intentionally omitted certain key facts related to jurisdiction, withheld the existence of an arbitration agreement and withheld a possible conflict of interest regarding Plaintiff's counsel.  (Def.'s Mot. for Sanctions, 4.)  Because these issues are the basis for independent motions filed by Defendant, which we lack jurisdiction over, due to Defendant's appeal before the Third Circuit, we decline to address them in this Memorandum Opinion.  (See Doc. Nos. 27, 31.)

Defendant's final justification for sanctions contends that Plaintiff's suit is "baseless" and not supported by the evidence.  (Def.'s Mot. for Sanctions, 1-2.)  Furthermore, Defendant argues that this is the result of Plaintiff's failure to conduct a reasonable investigation, and is evidence of Plaintiff's improper motive for filing suit.  (Id.)  These contentions require a thorough examination of the Complaint.

The Complaint evidences that Plaintiff's sole cause of action is a breach of contract claim emanating from an employment contract entered into between the parties.  Specifically, Plaintiff's suit alleges that Defendant breached Section 4 of the ACA which provides that:

> for six months after Church's (Defendant's) resignation, he may not, within the United States of America, 'directly or indirectly . . . own, manage, operate, finance, or be connected as an officer, director, partner, member, manager, owner, principal or otherwise with, or use or permit [his] name to be used in connection with, any Person which is involved in the Business of the Company or competes, directly or indirectly, with any FS Company in any manner . . . or be engaged as an employee, agent or consultant for any Person which is involved in the Business of the Company or competes, directly or indirectly, with any FS Company.

Compl. ¶ 12.

14

In alleging the breach of contract, Plaintiff cited a July 24, 2014, press release by Highland as supporting evidence.  Id. at ¶ 19.  This press release acknowledged the hiring of Defendant by Highland, and announced Highland's entrance into the independent channel and non-traded products business.  Id.  Upon receiving this information, Plaintiff engaged in further investigation by sending a letter to Defendant and the counsel for Highland.  Id. at ¶ 20. Although Defendant neglected to reply, counsel for Highland and its affiliate Nexbank responded by calling Plaintiff's counsel.  Id. at ¶¶ 21-22.  During this telephone conversation, Highland's counsel admitted that Defendant was in fact hired by NexBank.  Id. at ¶ 22.  In conclusion, Plaintiff asserted that, "based on Highland's press release, the written representations of its counsel and (Defendant's) failure to respond to the counsel for (Plaintiff), Defendant is violating Section 4 of the ACA by, within the first six months after his resignation, working for a company (NexBank) that competes with, or is in the same business" as Plaintiff.  Id. at ¶ 25.

In light of these assertions, we find that Plaintiff did engage in a "reasonable investigation" of the facts underlying its claim.  See Ford Motor Co., 930 F.2d at 289. Furthermore, it is the Court's view that Plaintiff filed the Complaint under the reasonable belief that its claim for breach of contract was well-grounded in fact.  Id.  Consequently, we hold that sanctions pursuant to Rule 11 are not justified in this case.

**III.    CONCLUSION**

For the aforementioned reasons, we find that the individual Motions for Sanctions filed by Plaintiff and Defendant lack merit.  Therefore, we deny the parties' Motions.

An appropriate Order follows.